IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF
TEXAS

 

════════════

No. 02-0748 

════════════

 

In
re Woman=s
Hospital of Texas, Incorporated d/b/a

Columbia
Woman=s
Hospital of Texas, Relator

 

- and -

 

════════════

No. 03-0334 

════════════

 

In
re Jeffrey Horswell, M.D., and

Jeffrey
Horswell, M.D., P.A., Relators

 

- and -

 

════════════

No. 03-0368 

════════════

 

In
re Kenneth Shapiro, M.D., Relator

 

- and -

 

════════════

No. 03-0474 

════════════

 

In
re Pablo S. Rodriguez, M.D., Relator

 

- and -

 

════════════

No. 03-0668 

════════════

 

In
re Fort Worth Osteopathic Hospital, Inc. d/b/a

Osteopathic
Medical Center of Texas, Relator

 

- and -

 

════════════

No. 03-0976 

════════════

 

In
re Craig W. Barker, M.D., High Plains Radiological Associates,

and
Muleshoe Area Hospital District d/b/a

Muleshoe
Area Medical Center, Relators

 

- and -

 

════════════

No. 03-0981 

════════════

 

In
re Southside Family Care Associates, P.A., and

Rob
Michael Tschauner, M.D., Relators

 

- and -

 

════════════

No. 03-1015 

════════════

 

In
re Riverside Hospital, Inc. d/b/a

Northwest
regional Hospital, et al., Relators

 

- consolidated with -

 

════════════

No. 03-1056 

════════════

 

In
re Derek Farley, D.O., Relator

 

- consolidated with -

 

════════════

No. 03-1062 

════════════

 

In
re Sidney Lynn Redels, D.O., Relator

 

 

════════════════════════════════════════════════════

On Petitions for
Writ of Mandamus

════════════════════════════════════════════════════

 

 

Justice
Owen, joined by Justice Hecht and Justice Brister, concurring in part and
dissenting in part to the denial of the petitions for writ of mandamus.

 

Today,
the Court has not only the opportunity but I believe the obligation to carry
out directives the Legislature gave to the courts of this state in article
4590i of the Revised Civil Statutes, which has recently been repealed and recodified with amendments.[1]  Because the Court shirks its
responsibilities, I respectfully dissent. 
I would grant mandamus relief in health care liability cases that remain
governed by former article 4590i when an expert report fails to meet the
statutory requirements and the trial court has nevertheless refused to comply
with governing law that requires dismissal of the case.

I

More than two decades ago, in 1977, the Texas Legislature concluded
that there was a medical malpractice crisis in this state.  In response the Legislature enacted the
Medical Liability and Insurance Improvement Act, embodied in former article
4590i.[2]  By 1995, the Legislature=s concerns had not abated but had
deepened.  As part of its continuing
efforts to reduce the cost of health care to Texans and to ensure that health
care would be available across the state, the Legislature amended article 4590i
to require trial courts to dismiss health care lawsuits unless an expert report
that met certain requirements was filed within the first 180 days of the suit,
with certain limited provisions for an extension.[3]  The obvious intent of this statutory
provision was to stop suits that had no merit from proceeding through the
courts.  The Legislature=s hope was,[4]
and is,[5]
that this would reduce waste of the parties=,
the courts=, and the insurers= time and money, which would favorably
impact the cost of insurance to health care providers and thus the cost and
availability of health care to patients. 


This
Court refuses to give effect to an integral part of the plan the Legislature
set forth in former article 4590i for addressing the increased cost and
increased unavailability of medical care. 
The Court refuses to act in spite of:

$               
the
Legislature=s conclusion that there is a crisis in Texas;[6]


 

$               
the
Legislature=s express desire that suits be dismissed if
at least one expert cannot opine how the health care provider departed from the
standard of care and how that departure caused the injury that is the basis for
the suit;[7]
and

 

$               
the
Legislature=s clear determination that law that applies
in other lawsuits is inadequate in some respects for health care liability
claims.[8]

 

The Court will not
grant mandamus relief even though that is the only way under former article
4590i to give effect to clearly articulated legislative policy when a trial
court will not dismiss a health care liability claim after a claimant fails to
file an expert report that meets the statutory requirements.

II

Just recently, as part of House Bill 4, the Legislature amended section
51.014 of the Texas Civil Practice and Remedies Code to provide for an
interlocutory appeal if a trial court refuses to dismiss a health care
liability claim when an expert=s statement does not meet the statutory
standards.[9]  This is another unmistakable statement of
public policy that the Legislature does not want health care liability cases to
proceed through the legal system if the threshold requirement of an expert
report has not been met.  Although an
interlocutory appeal is available only in cases filed on or after September 1,
2003, that is not an indication that the Legislature intended for courts to
deny mandamus relief in medical liability cases filed before that date.  In fact, it seems more likely that the
Legislature intended courts to continue to grant mandamus relief in former
article 4590i cases, but that for new cases to which the interlocutory appeal
provisions apply, the scope of interlocutory review would be narrowed.  This is supported by an examination of the
law that existed when the Legislature was crafting the interlocutory appeal
provisions in 2003.

Before
the enactment of the 2003 amendments that now permit interlocutory appeals, at
least two courts of appeals had held that mandamus relief was available in
health care liability cases involving challenges to expert reports.[10]  In In re Collom & Carney Clinic Ass=n, the trial court had found that the expert=s statement did not satisfy article 4590i=s requirements and that there had been no
accident or mistake, but the trial court nevertheless granted an extension of
time to file another expert statement.[11]  The court of appeals granted mandamus relief,
directing the trial court to dismiss the case.[12]  The court of appeals concluded that Athe dismissal in this case is compelled by
statute,@[13] observing that article 4590i Awas enacted by the Legislature to address
the problem of litigants filing frivolous claims against medical practitioners
without adequately investigating them in a timely manner.  This led physicians to settle such suits,
regardless of their merits, and also to expend sizeable sums defending such
claims.@[14]  The
court held that an appeal was inadequate under these circumstances.

Similarly,
in In re Morris, also decided before
the 2003 amendments allowing an interlocutory appeal were passed, the trial
court had granted a 30-day extension of time for the claimant to attempt to
comply with article 4590i.[15]  The court of appeals concluded that mandamus
relief would be available in such a case, citing In re Collom
& Carney Clinic Ass=n and explaining that A[i]n that case,
the court held that because the statute expressed a specific purpose of
addressing frivolous claims filed against medical practitioners by requiring
dismissal if a proper expert report was not filed, a remedy by direct appeal
was inadequate and mandamus would be available in a proper case.@[16]

When the
Legislature enacted the right to an interlocutory appeal, no reported decision
had held that mandamus relief was unavailable in cases governed by article
4590i.  To the contrary, as noted above,
at least two reported decisions had expressly said that mandamus relief was
available, and specifically, that it was available to override a trial court=s decision to grant a 30-day
extension.  When, in 2003, the
Legislature enacted an express provision for interlocutory appeals, it
specifically directed that an interlocutory appeal could not be taken from a
trial court=s decision to grant a 30-day extension.[17]  It thus seems plausible, even likely, that
the Legislature intended to carry forward existing law that allowed appellate
courts to direct a trial court to dismiss a health care liability claim when an
expert report was lacking or inadequate, but that the Legislature intended to narrow
existing law in order to eliminate interlocutory review when a trial court
granted a 30-day extension.

Granting
mandamus relief when there is no expert report that meets former article 4590i=s requirements is entirely consistent with
decisions of this Court that hold irreversible harm to the public=s interest makes a remedy by appeal
inadequate.  We issued a writ of mandamus
in In re Masonite
Corp. directing the trial court to grant the defendant=s motion to transfer venue.[18]  The trial court had recognized that the
venues chosen by the plaintiffs in two lawsuits (filed in Jim Hogg and Duval
Counties) were improper as to the non-resident plaintiffs, but instead of
granting the defendant=s motion to transfer to Dallas County, the
trial court severed the claims of hundreds of non-resident plaintiffs and
transferred those claims to the claimants= sixteen respective counties of residence,
none of which was Dallas County.  This
Court pointed out that we do not normally issue mandamus when a trial court
erroneously denies a motion to transfer Aeven though the trial court has committed
reversible error.@[19]  But
we recognized that while A[a]ppeal may be
adequate for a particular party, . . . it is no remedy at all
for the irreversible waste of judicial and public resources that would be
required here if mandamus does not issue.@[20]  We
held that the overlay of the public=s interest satisfied the Aexceptional circumstances@ principle, consistent with Walker v.
Packer.[21]

We also
granted mandamus relief in CSR Ltd. v. Link, directing the trial court
to grant the defendant=s special appearance.[22]  We held that Athe
concerns of judicial efficiency in mass tort litigation combined with the
magnitude of the potential risk for mass tort actions against the defendant
makes ordinary appeal inadequate.@[23]  In Link,
an Australian company had been sued by five plaintiffs, but we recognized that
there were potentially thousands of claimants. 
We said, ABecause of the size and complexity of the
asbestos litigation, the most prudent use of judicial resources in this case is
to permit a preliminary resolution of the fundamental issue of personal
jurisdiction by writ of mandamus.@[24]

In cases
governed by former article 4590i, the injury to the public that cannot be
remedied by appeal is the adverse impact on the cost and availability of health
care to patients in Texas.  When suits
continue to proceed through the system even though an expert report meeting
article 4590i=s requirements has not been filed, the
costs of those proceedings unalterably add to the overall cost of defending
health care claims.  This is precisely
the evil that the Legislature sought to eliminate when it mandated dismissal as
the consequence of the lack of an adequate expert report.  Once the costs of continuing to litigate are
expended, they irrevocably become part of the burden that the Legislature has
determined is impairing the health care system in Texas.  Only the intervention of the appellate courts
by mandamus relief can supply the remedy when trial courts fail to comply with
former article 4590i=s command to dismiss claims.

Recognizing
the availability of mandamus relief in these cases would also be entirely
congruent with the course this Court has taken in arbitration matters.  Twelve years ago, in Jack B. Anglin Co. v. Tipps,[25]
this Court recognized that there was a disparity in the availability of an
interlocutory appeal between cases under the Federal Arbitration Act[26]
and those under the Texas Arbitration Act.[27]  While both statutory schemes provide for an
interlocutory appeal, Afederal procedure does not apply in Texas
courts, even when Texas courts apply the Federal Act,@ and an interlocutory appeal under the
Texas statute was only available in cases to which the Texas Act applied.[28]  In Tipps, we
called on the Legislature to amend the Texas Act to permit interlocutory
appeals when the Federal Act applied.[29]  We said that A[s]uch a procedure, already available for orders under the
Texas Act, is preferable to reliance on the writ of mandamus.@[30]  We
nevertheless held that mandamus relief is available when the Federal Act
applies Ato fill this gap in appellate jurisdiction.@[31]  We
also recognized that A[a]bsent mandamus
relief, Anglin would be deprived of the benefits of
the arbitration clause it contracted for, and the purposes of providing a
rapid, inexpensive alternative to traditional litigation would be defeated.@[32]

The same
parallel exists between cases governed by former article 4590i and those
governed by sections 74.351(b) and 51.014(a)(9) of the Texas Civil Practice and
Remedies Code.[33]  Interlocutory appeal is now expressly
available in the latter cases, but not in the former.  As discussed earlier, it is not unreasonable
to assume that the Legislature intended courts to continue to issue mandamus
when necessary in cases governed by former article 4590i.  This Court should bridge the Agap in appellate jurisdiction@[34] rather than leave it gaping.

There is
no logical basis for leaving this Agap,@ particularly when the Legislature has said
since 1995 that dismissing cases in which the requisite expert report has not
been filed is a necessary part of the solution to what the Legislature has
termed a crisis in Texas.  The statutory
mechanism for dismissing health care liability suits is analogous to the Arapid, inexpensive alternative to
traditional litigation@ that we said arbitration provides, but
that would be Adefeated@
A[a]bsent mandamus
relief.@[35]

If press
accounts of the numbers of health care liability claims filed before the
September 1, 2003 effective date of the 2003 amendments are to be believed, the
number of cases still governed by former article 4590i is significant.[36]  They number in the thousands.[37]  

III

I note that in addition to the decisions in In
re Morris[38]
and In re Collom & Carney Clinic Ass=n,[39]
other courts of appeals have indicated that mandamus relief is available in
cases governed by former article 4590i. 
In In re Rodriguez,[40]
the court of appeals discussed Walker v. Packer,[41]
duly observing that Athe cost or delay of having to go through
trial and the appellate process does not necessarily make that procedure
inadequate.@[42]  But
the court of appeals concluded that the purpose of article 4590i rendered
appeal an inadequate remedy:

To
support his contention that he has no adequate remedy at law and is entitled to
bring this mandamus proceeding, relator relies upon
the reasoning employed by the court in In
re Collom & Carney Clinic Ass=n, 62 S.W.3d 924 (Tex. App.BTexarkana 2001, no pet.).  In that case, the court held that the statute
had the specific purpose of eliminating frivolous claims filed against medical
practitioners by requiring dismissal if an expert report sufficiently showing
the claim was not frivolous was not timely filed.  Because of this purpose, the court concluded,
a remedy by direct appeal was inadequate and mandamus would be available in a
proper case.  Id. at 929‑30.  As we did in In
re Olivia Morris, M.D.[, 93 S.W.3d 388 (Tex. App.BAmarillo 2002, orig. proceeding)], we agree
with that decision and the court=s reasoning.[43]


 

Similarly,
the court of appeals in In re Tenet
Hospitals Ltd. held that, when a report omits one of the requirements of
article 4590i, there is no adequate remedy by appeal and mandamus should issue
dismissing the suit.[44]  That decision cited In re Rodriguez[45]
as well as In re Collom & Carney Clinic Ass=n[46] and In re Morris.[47]

Two
other courts of appeals have reached the merits of mandamus proceedings
regarding expert reports in health care liability cases without expressly
deciding whether there is an adequate remedy by appeal.  The court in In
re Hendrick Medical Center, Inc. held that the
trial court did not abuse its discretion in granting a 30-day grace period,
noting A[a]lthough we do
not reach the question of whether Relators have an
adequate remedy at law, see In re Collom
. . . for a discussion of this requirement for a writ of mandamus.@[48]  And
the court in In re Barker noted that A[n]either party disputes that in this type
of matter, this court would have jurisdiction to issue a writ of mandamus if it
were justified.@[49]

Like
several of our courts of appeals, I have no difficulty  concluding that the purposes of the expert
report requirements in former article 4590i can only be served if mandamus
relief is available.  The 2003 amendments
to the Legislature=s statutory scheme and the corresponding
amendment to section 51.014 of the Texas Civil Practice and Remedies Code do,
however, inform my view of when mandamus relief would be available.  Section 74.351 of the Texas Civil Practice
and Remedies Code contains what was formerly section 13.01 of article 4590i,
together with certain 2003 amendments.[50]  Under this revised legislative scheme, a
trial court may grant one 30-day extension in order to cure any deficiency in a
report prepared by an expert.[51]  As discussed above, section 51.014 provides
that there is no interlocutory appeal from a trial court=s decision to grant such an extension.[52]  Accordingly, I would not grant mandamus
relief under former article 4590i when a trial court erroneously grants a
30-day extension.  But I see no
principled basis for withholding mandamus relief under former article 4590i
when a trial court fails to dismiss a health care liability claim after the
time for filing an expert report has come and gone, and a report meeting the
statutory requirements has not been supplied. 
Nothing in the text or legislative history of either former article
4590i or the 2003 amendments suggests that mandamus relief was not contemplated
by the Legislature.  To the contrary, the
text and purposes of the statute indicate that the Legislature expected courts
to follow its directive and dismiss claims that did not meet the statutory
expert report requisites.

IV

Ten petitions for writ of mandamus are currently pending before the Court[53]
that challenge trial courts= rulings in health care liability actions
regarding the expert report requirements contained in section 13.01 of former
article 4590i.[54]  I would consider the merits of each petition
rather than summarily deny relief.  I
would conditionally grant mandamus relief in three of the cases before us and
hear oral argument in a fourth case, but I concur in the denial of relief in
the six other proceedings for the reasons that follow.

In In re Woman=s Hospital of Texas, Inc.,[55]
the claimants sued a physician and a hospital and filed a report that was later
supplemented.  The trial court denied the
hospital=s motion to dismiss.  The court of appeals denied mandamus relief
in a very brief opinion, concluding that there was an adequate remedy by
appeal,[56]
but noting that this conclusion was contrary to In re Collom
& Carney Ass=n.[57]  For the reasons discussed above, I would hold
that appeal is an inadequate remedy. 
Additionally, the expert statement tendered by the claimants in this
case failed to meet section 13.01=s requirements because it was almost
exclusively directed at the physician. 
It says nothing about the standard of care applicable to the hospital,
the manner in which the hospital failed to meet that standard, or how the
hospital caused the injury claimed.  I
therefore would conditionally grant mandamus relief.

In In re Horswell,[58]
the trial court denied a motion to dismiss, and the court of appeals denied
mandamus relief in a brief memorandum opinion that did not state the basis for
the decision.  The patient in this case
died during a cardiac bypass procedure that was performed Aoff pump,@
meaning the patient was not placed on a heart-lung bypass pump.  The claimants offered an expert=s statement that was critical of Dr. Mack,
the surgeon, and Dr. Horswell, the
anesthesiologist.  Only Horswell is seeking mandamus relief.  The expert=s
statement did not draw any distinction between the respective obligations or
roles of a surgeon and an anesthesiologist. 
The expert=s statement did not set forth the standard
of care for an anesthesiologist or explain whether it was the anesthesiologist=s obligation to place the patient on a pump
or to notify the surgeon that, in the anesthesiologist=s opinion, the patient should be placed on
a pump.  The expert=s statement was conclusory,
at least with regard to Horswell, and I would
conditionally grant mandamus relief.

In In re Southside Family Care Associates, P.A.,[59]
the trial court denied a motion to dismiss, and the court of appeals denied
mandamus relief in a brief memorandum opinion that did not state the basis for
its decision.  Milburn Blondell Jones was treated by a number of health care
providers and ultimately died after a cardiac catheterization and later a
cardiac bypass were performed.  The
claimants in this case sued the cardiologist, cardiovascular surgeon, family
practitioner, Southside Family Care, Corpus Christi Medical Center, and
others.  Southside Family Care and Dr. Tschauner, a family practitioner, seek mandamus
relief.  The expert=s statement tendered by the claimants does
not opine that Southside Family Care breached any standard of care or caused
Mr. Jones=s death. 
As to Tschauner, the statement does contain a conclusory statement that he and others caused Mr. Jones=s death, but does not state what standard
of care applied to Tschauner, how any standard was
breached, or any causal connection between Mr. Jones=s death and a failure by Tschauner to follow a standard of care.  The expert=s
statement does not meet the requirements of subsection 13.01(r)(6) of former
article 4590i.[60]  I would conditionally grant mandamus relief.

The
facts in In re Fort Worth Osteopathic
Hospital, Inc.[61]
present interesting issues that no Texas court seems to have yet addressed and
that are worthy of this Court=s attention.  In this case, Donna McKinzie
died after a triple coronary bypass.  Her
family sued Fort Worth Osteopathic Hospital. 
After the claimants had tendered an expert=s
statement, the hospital filed a motion to dismiss.  The trial court did not expressly rule on
that motion or two subsequent motions to reconsider, instead continuing each
hearing on the motions and allowing the plaintiffs additional time for
discovery.  While the mandamus petition
was pending in this Court, the discovery period allowed by the trial court
ended (over a year after the first motion to dismiss was filed), and the
hospital filed a third motion to reconsider. 
The case was transferred to a new trial judge, who denied the hospital=s motion to reconsider and the plaintiffs= motion for additional time to modify the
report. 

The
trial court apparently allowed additional time for discovery because medical
records were, and remain, missing.  The
expert=s statement reflects that McKinzie was transferred to the hospital on January 15 and
coronary surgery occurred on January 23. 
The physician=s medical records from January 15 through
January 27 are missing, as are the physician=s
orders from January 22 through January 27 and the nurses= notes from January 22 through January
28.  The claimants= expert states: 

It is impossible to
determine the actual clinical course of events that led to Ms. McKinzie=s progressive downhill course and eventual
death, but it seems suspicious that such important documents are missing during
that critical period of time. . . .  I
must, therefore, assume that some entry in those missing records indicates
inappropriateness of care from the health care provider, including, but not
limited to, physicians, nurses, or other hospital employees.  I must also assume that such inappropriate,
although undocumented at present, care was a causative factor in Ms. Donna McKinzie=s death.

 

The hospital contends that the trial court abused its discretion both
in granting the continuances and in refusing to dismiss the case despite the
lack of an adequate expert report.  The
plaintiffs counter that to dismiss would reward the hospital for losing or
destroying critical records.  This case
thus presents the issue of what effect spoliation of evidence, if any, has on
article 4590i=s expert report requirements.  I would hear oral argument to allow the Court
to consider this important issue.

My reasons for denying relief in the other mandamus proceedings are set
forth below.

In In re Shapiro,[62]
cranial surgery was performed on a child, and an infection resulted from a bone
implant that was used.  The child=s parents sued, contending that there was
no informed consent because they were not told that demineralized
bone would be placed in their child=s head. 
Dr. Shapiro, one of the defendants and a pediatric neurosurgeon, filed a
motion to dismiss contending that the expert who supplied a statement was not
qualified to opine and that her statement provided only a conclusory
description of the standard of care, breach of that standard, and
causation.  The trial court denied the
defendant=s motion to dismiss, and the court of
appeals denied mandamus relief.[63]  Although the qualifications of the expert present
a close question, I cannot say that the trial court abused its discretion.  The expert did not have any experience or
training in pediatric neurosurgery.  She
was board certified by the American Board of Pediatrics and specialized in
pediatrics and pediatric infectious disease. 
But her statement says:

My expertise
includes a thorough knowledge and understanding of how the infectious process
works as it relates to surgery, the cutting of bone, and the type of surgery
involved in this case.  I also have
thorough knowledge concerning the coordination and responsibility of patient
care as it relates to an admitting physician and his or her medical group.  I am familiar with the standard of care
applicable to . . . Kenneth Shapiro, M.D.

 

Nor
can I say that the trial court abused its discretion in concluding that the
expert=s statement adequately addressed informed
consent regarding the use of demineralized bone
implanted material.[64]  Accordingly, I would deny the petition for
writ of mandamus in this case.

The trial court in In re Rodriguez[65]
ruled that the first statement submitted by the expert did not meet the
requirements of article 4590i.  However,
the trial court also concluded that the failure to file an adequate report was
due to counsel=s mistaken belief that the statement met
the statutory requirements.  The trial
court ruled that this constituted Aan accident or mistake@ within the meaning of former subsection
13.01(g) of article 4590i and granted a 30-day extension.  The claimants then filed another expert
statement.  Dr. Rodriguez, one of four
defendants in the trial court, sought mandamus relief in the court of appeals
challenging only the trial court=s 30-day extension.  He did not challenge the second expert
statement.  The court of appeals held
that counsel=s mistaken belief as to the adequacy of the
first expert statement satisfied the Aaccident or mistake@ provision in former subsection 13.01(g).[66]  The court of appeals= decision was issued before this Court held
to the contrary in Walker v. Gutierrez.[67]  Nevertheless, I would deny mandamus relief in
this case in light of the Legislature=s policy decision that is reflected in the
2003 amendments.  Under current section
74.351(c), a trial court may grant one 30-day extension,[68]
and an interlocutory appeal is not available from such an order.[69]  Under former subsection 13.01(f), a trial
court could Afor good cause shown after motion and
hearing, extend any time period specified in Subsection (d) of this section for
an additional 30 days.@[70]  I
would not grant any greater remedy by mandamus in cases governed by former
article 4590i than is available by interlocutory appeal after the 2003
amendments.  Accordingly, I agree that
mandamus relief should be denied in this case.

Three other mandamus proceedings arise out of the same suit in the
trial court and have been consolidated in this Court.[71]  As in Rodriguez, the trial court
granted a 30-day extension to file an expert statement because counsel said
that he mistakenly believed that the statement met the statutory
requirements.  Only the 30-day extension
is challenged.  For the same reasons that
I would deny relief in Rodriguez, I would deny relief in these cases.

 

Finally, I concur that relief should be denied in In
re Barker.[72]  The trial court denied the defendant=s motion to dismiss, and the court of
appeals denied mandamus relief.[73]  The court of appeals observed that A[n]either party disputes that in this type
of matter, this court would have jurisdiction to issue a writ of mandamus if it
were justified,@[74] and the court proceeded to decide the case
on the merits.  The court of appeals= opinion quotes from the expert=s statement at length, and I agree with
that court that the report met the requirements of former article 4590i.[75]

V

While I appreciate that the Court may fear
that granting mandamus relief in health care liability cases could give rise to
arguments in other types of cases that we should alter or relax the standards
for granting mandamus relief set forth in Walker v. Packer,[76]
any such fear does not justify withholding relief in health care liability
cases for at least three reasons.  The
first is that granting mandamus is entirely consistent with Walker v. Packer
and cases following it for the reasons discussed above.  The second reason is that the Court is free
to reject arguments in other types of cases that we should alter or relax the Walker
v. Packer requirements for mandamus as a general proposition.  The third and most important reason is that
we are faced with clearly articulated legislative policy that health care
liability claims are to be dismissed unless there is an adequate expert report,
and the Legislature has concluded that this requirement is a necessary part of
a plan to confront what the Legislature perceives to be a crisis in this state.

* * * * *

For the foregoing reasons, I respectfully dissent from the denial of
the petitions for writ of mandamus in In re
Woman=s Hospital of Texas, Inc., In re Horswell,
In re Southside Family Care, and In re Fort Worth Osteopathic
Hospital, Inc.  I concur in the
denial of the six other proceedings identified above, but I would deny the
petitions based on their merits.  I would
not deny them on the basis that mandamus relief is never appropriate in cases
governed by former article 4590i.

 

__________________________________________

Priscilla
R. Owen

Justice

 

 

OPINION DELIVERED:
March 5, 2004











[1] Act of May 30, 1977, 65th Leg., R.S.,
ch. 817, 1977 Tex. Gen. Laws 2039 (as amended)
(former Tex. Rev. Civ.
Stat. art. 4590i), repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884
(current version at Tex. Civ. Prac. & Rem. Code '' 74.001 et seq.).





[2] Id.





[3] Act of May 5, 1995, 74th Leg., R.S., ch. 140, ' 1, 1995 Tex. Gen. Laws 985, 986
(former Tex. Rev. Civ.
Stat. art. 4590i, ' 13.01) (repealed 2003).





[4] Act of May 30, 1977, 65th Leg., R.S.,
ch. 817, 1977 Tex. Gen. Laws 2039, 2039-41 (former Tex. Rev. Civ. Stat.
art. 4590i, ' 1.02) (repealed 2003).





[5] Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, ' 10.11, 2003 Tex. Gen. Laws 847,
884-85.





[6] Act of May 30, 1977, 65th Leg., R.S.,
ch. 817, 1977 Tex. Gen. Laws 2039, 2039 (former Tex. Rev. Civ. Stat.
art. 4590i, ' 1.02) (repealed 2003); see also Act
of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.11(a), 2003 Tex. Gen. Laws 847,
884.





[7] Act of May 5, 1995, 74th Leg., R.S., ch. 140, ' 1, 1995 Tex. Gen. Laws 985, 986
(former Tex. Rev. Civ.
Stat. art. 4590i, ' 13.01) (repealed 2003); see also Tex. Civ. Prac. & Rem. Code ' 74.351.





[8] Act of May 30, 1977, 65th Leg., R.S.,
ch. 817, 1977 Tex. Gen. Laws 2039, 2041 (former Tex. Rev. Civ. Stat.
art. 4590i, ' 1.02(b)(7)) (repealed 2003); see
also Act of June 2, 2003, 78th Leg., R.S., ch.
204, ' 10.11(b)(7), 2003 Tex. Gen. Laws 847,
885.





[9] Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, ' 1.03, 2003 Tex. Gen. Laws 847, 849
(current version at Tex. Civ. Prac. & Rem. Code ' 51.014(a)(9)).





[10] In re Morris, 93 S.W.3d 388,
390 (Tex. App.BAmarillo 2002, orig. proceeding);
In re Collom & Carney Clinic Ass=n, 62 S.W.3d 924, 929-30 (Tex. App.BTexarkana 2001, orig. proceeding).





[11] In re Collom
& Carney Clinic Ass=n, 62 S.W.3d at 927.





[12] Id. at 930.





[13] Id. at 929.





[14] Id.





[15] In re Morris, 93 S.W.3d at
389.





[16] Id. at 390.





[17] Tex.
Civ. Prac. & Rem. Code ' 51.014(a)(9) (stating Aexcept that an appeal may not be taken
from an order granting an extension under Section 74.351@).





[18] 997 S.W.2d 194, 199 (Tex. 1999).





[19] Id.





[20] Id. at 198.





[21] Id. (citing Walker v.
Packer, 827 S.W.2d 833 (Tex. 1992)).





[22] 925 S.W.2d 591, 597 (Tex. 1996).





[23] Id.





[24] Id.  In other special appearance cases, we held
that a A>total and inarguable absence of
jurisdiction= justifies extraordinary relief,@ Nat=l Indus. Sand Ass=n v. Gibson, 897 S.W.2d 769, 776 (Tex. 1995), and
that Acomity@ and Athe risk of harm to interstate and
international relations likely to occur if a Texas trial court erroneously
exercises jurisdiction over another sovereign@ justifies mandamus relief.  K.D.F. v. Rex, 878 S.W.2d 589, 593
(Tex. 1994).





[25] 842 S.W.2d 266, 272 (Tex. 1992).





[26] 9 U.S.C. ' 16.





[27] Tex.
Civ. Prac. & Rem. Code ' 171.098.





[28] Tipps,
842 S.W.2d at 272.





[29] Id. (A[W]e urge the legislature to consider
amending the Texas Act to permit interlocutory appeals of orders issued
pursuant to the Federal Act.@). 





[30] Id.





[31] Id.





[32] Id. at 272-73.





[33] Tex.
Civ. Prac. & Rem. Code '' 51.014(a)(9), 74.351(b).





[34] Tipps,
842 S.W.2d at 272.





[35] Id. at 272-73.





[36] See Rice, Medical Lawsuits
Flood County Courts/Lawyers Rush Before Caps Take Effect, Hou. Chron.,
Sept. 11, 2003, available at 2003 WL 57441900 (observing that 1,069
medically related lawsuits were filed in Harris County between House Bill 4=s June 1, 2003 enactment and its
September 1, 2003 effective date); Backlog of Malpractice Cases Results from
Deadline, AP Wire, Sept. 11,
2003 (stating that 3,680 medically related lawsuits were filed in Harris County
through the end of August 2003); Council & Robbins, Mix Up over Bill=s Effective Date Causes Run On Courts, 19 Tex.
Law. 1 (June 9, 2003) (reporting that a large number of cases had been
filed in anticipation of House Bill 4=s enactment, including 2700 health
care liability cases filed in one week in Harris County, 450 cases filed in two
days in Dallas County, 400 cases filed in one week in Tarrant County, 210 cases
filed in one day in Bexar County, and 100 cases filed in one day in Travis
County); Rice, Rush to Beat Lawsuit Caps All for Naught, Hou. Chron.,
June 3, 2003, available at 2003 WL 3264466 (noting that medical
liability lawsuit filings increased as much as 200% to 500% in some counties in
response to House Bill 4).





[37] Id.





[38] 93 S.W.3d 388, 390 (Tex. App.BAmarillo 2002, orig. proceeding).





[39] 62 S.W.3d 924, 929-30 (Tex. App.BTexarkana 2001, orig. proceeding).





[40] 99 S.W.3d 825 (Tex. App.BAmarillo 2003, orig. proceeding), mand. denied, __ Tex. Sup. Ct. J. __ [03‑0474]
(March 5, 2004).





[41] 827 S.W.2d 833, 842 (Tex. 1992).





[42] In re Rodriguez, 99
S.W.3d at 827.





[43] Id. at 827-28.





[44] 116 S.W.3d 821, 827 (Tex. App.BEl Paso 2003, orig. proceeding).





[45] 99 S.W.3d at 828.





[46] 62 S.W.3d 924, 929-30 (Tex. App.BTexarkana 2001, orig. proceeding).





[47] 93 S.W.3d 388, 390 (Tex. App.BAmarillo 2002, orig. proceeding).





[48] 87 S.W.3d 773, 775 n.3 (Tex. App.BEastland 2002, orig. proceeding).





[49] 110 S.W.3d 486, 487 (Tex. App.BAmarillo 2003, orig. proceeding), mand. denied, __ Tex. Sup. Ct. J. __
[03-0976] (March 5, 2004).





[50] Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, ' 10.01, 2003 Tex. Gen. Laws 847, 875
(current version at Tex. Civ. Prac. & Rem. Code ' 74.351).





[51] Tex.
Civ. Prac. & Rem. Code ' 74.351(c).





[52] Id. ' 51.014(a)(9).





[53] An eleventh petition for writ of
mandamus in this category was recently abated by this Court because a party
filed for bankruptcy, In re Hoekstra, No. 13-03-00498-CV, 2003 WL _____
(Tex. App.BCorpus Christi Oct. 2, 2003, orig.
proceeding), mand. abated, __ Tex. Sup.
Ct. J. __ [03-1012] (February 13, 2004), and a twelfth petition was recently
abated pursuant to Texas Rule of Appellate Procedure 7.2(b) to allow a trial
judge who has succeeded the trial judge who made the original ruling to
reconsider that ruling.  In re Herrera,
No. 05-02-00003-CV, 2003 WL 193307 (Tex. App.BDallas Feb. 8, 2002, orig.
proceeding), mand. abated, __ Tex. Sup.
Ct. J. __ [02-1002] (December 19, 2003).





[54] As noted above, in 2003 the expert
report requirements of former subsection 13.01 of article 4590i were recodified with amendments as section 74.351 of the Texas
Civil Practice and Remedies Code.  Act of
June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.01, 2003 Tex. Gen. Laws 847, 875
(current version at Tex. Civ. Prac. & Rem. Code ' 74.351).





[55] No. 14-02-00561-CV, 2002 WL _______
(Tex. App.BHouston [14th Dist.] July 26, 2002,
orig. proceeding), mand. denied, __
Tex. Sup. Ct. J. __ [02-0748] (March 5, 2004).





[56] Id.





[57] 62 S.W.3d 924, 929-30 (Tex. App.BTexarkana 2001, orig. proceeding).





[58] No. 05-03-00474-CV, 2003 WL 1754010
(Tex. App.BDallas Apr. 3, 2003, orig.
proceeding), mand. denied, __ Tex. Sup.
Ct. J. __ [03-0334] (March 5, 2004).





[59] No. 13-03-00535-CV, 2003 WL ________
(Tex. App.BCorpus Christi Oct. 6, 2003, orig.
proceeding), mand. denied, __ Tex. Sup.
Ct. J. __ [03-0981] (March 5, 2004).





[60] Act of May 5, 1995, 74th Leg., R.S., ch. 140, ' 1, 1995 Tex. Gen. Laws 985, 986
(former Tex. Rev. Civ.
Stat. art. 4590i, 13.01(r)(6)) (repealed 2003); see also Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002); Am.
Transitional Care Ctrs. of Tex. v. Palacios, 46
S.W.3d 873, 878-79 (Tex. 2001).





[61] No. 02-03-00169-CV, 2003 WL 21666812
(Tex. App.BFort Worth July 7, 2003, orig.
proceeding), mand. denied, __ Tex. Sup.
Ct. J. __ [03-0668] (March 5, 2004).





[62] No. 05-03-00343-CV, 2003 WL 1059974
(Tex. App.BDallas Mar. 12, 2003, orig.
proceeding), mand. denied, __ Tex. Sup.
Ct. J. __ [03-0368] (March 5, 2004).





[63] Id. at *1.





[64] The statement says:

 

The use of these [demineralized
bone and related] products and the repercussions of infection involving these
implanted materials instead of her own skull bone was apparently not explained
to her parents prior to surgery.  I
understand that the use of the child=s own bone in the surgery, rather than
an implant or implanted material, was an important factor in the parents= decision to allow Dr. Salyer to operate at that time.  In fact, the operative note for the January
18, 2000 surgery refers to the use of Aautologous@ bone, and does not refer to
implanting demineralized bone in the child=s head, although it later refers to Ademineralized dust@ being used to contour portions of the
skull.

                                                                               *
* *

The informed consent forms in the hospital record offer
several options for the physician to choose and the patient to initial
depending upon the type of surgery involved. 
Two of those choices, namely, Aosteotomy@ under Section 12.4, and Acorrection of cranial deformity@ under Section 13.5, apparently were
not checked off.  The Aosteotomy@ portion of the consent form is
particularly significant because it indicates the possible repercussions of
surgery involving the cutting of bone that the patient must understand in order
for them to give their proper consent for the surgery.  These repercussions include the possible need
to replace any implanted bone material that may be placed in the patient or
that a bone infection could develop. 
Regardless of whether these repercussions appear on the form, however,
the standard of care required that that [sic] the parents be informed of this
information before consenting to the surgery. 
Bone infection is precisely what Lisa Wilcox ultimately developed in this
case, and implanted material was removed from her head [in a subsequent
surgery].  The applicable standard of
care required that Lisa Wilcox=s parents be advised of these risks
and repercussions.  Dr. Shapiro and Dr. Salyer breached the standard of care by not explaining to
Lisa Wilcox=s parents that demineralized
material may be used, or the repercussions that could result from the use of
such implants before they consented to the surgery.  That breach resulted in uninformed, improper
consent being given for the surgery, and the subsequent infection, surgery, and
need for the future surgeries described above.





[65] 99 S.W.3d 825 (Tex. App.BAmarillo 2003, orig. proceeding), mand. denied, __ Tex. Sup. Ct. J. __
[03-0474] (March 5, 2004).





[66] Id. at 829.





[67] 111 S.W.3d 56, 64-65 (Tex. 2003).





[68] Tex.
Civ. Prac. & Rem. Code ' 74.351(c).





[69] See id. ' 51.014(a)(9) (stating that Aan appeal may not be taken from an
order granting an extension under Section 74.351@).





[70] Act of May 5, 1995, 74th Leg., R.S., ch. 140, ' 1, 1995 Tex. Gen. Laws 985, 986
(former Tex. Rev. Civ.
Stat. art. 4590i, ' 13.01(f)) (repealed 2003).





[71] In re Riverside Hosp., Inc.,
No. 13-03-00499-CV, 2003 WL ______ (Tex. App.BCorpus Christi Oct. 2, 2003, orig.
proceeding), mand. denied, __ Tex. Sup.
Ct. J. __ [03-1015] (March 5, 2004); In re Farley, No. 13-03-00517-CV,
2003 WL ______ (Tex. App.BCorpus Christi Oct. 2, 2003, orig.
proceeding), mand. denied, __ Tex. Sup.
Ct. J. __ [03-1056] (March 5, 2004); In re Redels,
No. 13-03-00516-CV, 2003 WL ______ (Tex. App.BCorpus Christi Oct. 2, 2003, orig.
proceeding), mand. denied, __ Tex. Sup.
Ct. J. __ [03-1062] (March 5, 2004).  A
fourth petition for writ of mandamus arising out of the same underlying lawsuit
has been abated pursuant to bankruptcy.  See
In re Hoekstra, No. 13-03-00498-CV, 2003 WL ______ (Tex. App.BCorpus Christi Oct. 2, 2003, orig.
proceeding), mand. abated, __ Tex. Sup.
Ct. J. __ [03-1012] (February 13, 2004).





[72] 110 S.W.3d 486 (Tex. App.BAmarillo 2003, orig. proceeding), mand. denied, __ Tex. Sup. Ct. J. __ [03‑0976]
(March 5, 2004).





[73] Id. at 491.





[74] Id. at 487.





[75] Id. at 489-90.





[76] 827 S.W.2d 833, 839-44 (Tex. 1992).